UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICHOLAS REED MAGEE                    CIVIL ACTION

VERSUS                                 NO. 22-3835

FLORIDA MARINE, LLC, ET AL             SECTION: "P" (5)

<u>ORDER AND REASONS</u>

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Third-Party Defendant, McNational, Inc. ("McNational").[1] Defendants and Third-Party Plaintiffs, Florida Marine, LLC, Florida Marine Transporters, LLC, and PBC Management, LLC (collectively, "Florida Marine" or "Defendants") oppose the motion.[2]  In response, McNational filed a reply memorandum in support of its motion.[3]  For the reasons assigned below, McNational's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

I.      **BACKGROUND**

This action arises out of injuries allegedly sustained by Plaintiff Nicholas Reed Magee while working as a deckhand aboard the M/V JOHN PASENTINE II ("Vessel") on March 6, 2022.[4]  According to Plaintiff, the Vessel was on the Ohio River near Catlettsburg, Kentucky when the Master of the Vessel instructed him to unload material from the Vessel by traversing a barge and dock, and while doing as instructed, Plaintiff fell into the river and sustained injuries to his lungs, back, knees, legs, neck, and other parts of his body.[5]  Plaintiff alleges he was employed by Florida Marine as a Jones Act seaman at the time of the incident and that Florida Marine owns and

---

[1] R. Doc. 13.
[2] R. Doc. 41.
[3] R. Doc. 66.
[4] R. Doc. 1 at 3.
[5] *Id.*

operates the M/V JOHN PASENTINE II.[6]  Plaintiff filed a Complaint against Florida Marine in this Court on October 13, 2022, asserting claims under the Jones Act and general maritime law.[7]

On November 8, 2022, Florida Marine filed an Answer to Plaintiff's Complaint as well as a Third-Party Demand and Rule 14(c) Tender ("Demand") against McNational.[8]  In its Demand, Florida Marine alleges that McNational conducts business operations through several "divisions" along the Mississippi River.[9]  These "divisions" include, in relevant part: (1) an Illinois corporation, Mid America Fuels, Inc. ("MAF"), which has a facility in Kentucky where the barge and dock mentioned in Plaintiff's Compliant are located, and (2) a Louisiana corporation, National Maintenance & Repair of Louisiana, Inc. ("NMR-LA").[10]  Florida Marine further alleged that Plaintiff slipped and fell while walking between the barge and dock that were in the care, custody, and garde of McNational and that it was the negligence of McNational that caused Plaintiff's injuries.[11]  Florida Marine thus contends that McNational is solely liable to Plaintiff for his injuries and is also liable to Florida Marine for reimbursement of all maintenance and cure paid to, or on behalf of, Plaintiff arising out of the incident.[12]

In response, McNational filed the instant motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[13]  At the request of Florida Marine, the

---

[6] *Id.*

[7] *Id.* at 1.

[8] R. Doc. 9.

[9] *Id*. at 8. The parties dispute whether these entities are properly referred to as "divisions" or "subsidiaries." The Court finds this distinction irrelevant to its ultimate analysis and, for the sake of uniformity and consistency, will refer to the entities as subsidiaries except when directly quoting Florida Marine's Demand.

[10] *Id.*

[11] *Id.* at 9.

[12] *Id.* at 9–11.

[13] R. Doc. 13.

parties then engaged in jurisdictional discovery related to the issues raised in McNational's motion.[14]  The motion is now fully briefed and ripe for the Court's review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a party to seek dismissal of the claims against it for lack of personal jurisdiction.  When a third-party defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists.[15]  "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[16]  When the court decides the motion without holding an evidentiary hearing, as in the instant case, the burden of proof is satisfied by "a *prima facie* showing of the facts on which jurisdiction is predicated."[17]  In determining whether a *prima facie* case exists, this Court "must accept as true [Florida Marine's] uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation."[18]

## III.    LAW AND ANALYSIS

In an admiralty case, a federal district court may exercise personal jurisdiction over a non-resident defendant if: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment.[19]  Because the limits of Louisiana's long-arm statute are coextensive with constitutional due process limits,[20] this Court's sole inquiry is whether the exercise of personal

---

[14] *See* R. Docs. 14, 15, 25, 27.
[15] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[16] *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985)).
[17] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 342–43 (5th Cir. 2004).
[18] *Id.* at 343 (cleaned up).
[19] *Id.*
[20] *See* LA. REV. STAT. § 13:3201(B).

jurisdiction comports with federal constitutional guarantees.[21]   A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process only when: (1) that defendant has certain minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.[22] "Whether a defendant has 'minimum contacts' with the forum depends on the nature and extent of 'the defendant's relationship to the forum."[23]   That focus has led the courts to recognize "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction."[24]

      "General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant" regardless of whether those claims "relate to the forum State or the defendant's activity there."[25]   A court may exercise general jurisdiction only when a defendant's contacts with the forum are so "continuous and systematic" as to render the defendant "essentially at home" in the forum.[26]   Specific jurisdiction, conversely, applies to a narrower class of claims: those that "arise out of or relate to the defendant's contacts with the forum."[27]   The contacts needed for specific jurisdiction to attach often go by the name "purposeful availment."[28]   That is, the non-resident defendant must have taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities in the forum state."[29]   "The 'purposeful availment' requirement

---

[21] *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008)).

[22] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

[23] *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

[24] *Ford Motor Co.*, 141 S. Ct. at 1024 (citing *Goodyear*, 564 U.S. at 919).

[25] *Id.* (quoting *Goodyear*, 564 U.S. at 919).

[26] *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear*, 564 U.S. at 919).

[27] *Ford Motor Co.*, 141 S. Ct. at 1024–25 (internal quotations omitted) (quoting *Bristol-Myers*, 582 U.S. at 262).

[28] *Id.* at 1024 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[29]  *Clemens v. McNamee,* 615 F.3d 374, 377 (5th Cir. 2010) (quoting *Burger King* 471 U.S. at 474).

ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[30]

In the present case, Florida Marine avers that this Court may exercise general jurisdiction over McNational because of McNational's contacts with Louisiana through the operations of its subsidiaries, NMR-LA and Excell Marine Corporation ("Excell Marine").   As a general rule, courts may not exercise personal jurisdiction over a non-resident parent company based solely on the presence of a subsidiary company in the forum state.[31]   However, and as Florida Marine argues here, when the parent and subsidiary are mere alter egos of one another, the contacts of the subsidiary may be imputed to the parent for purposes of jurisdiction.[32]   "The theory behind this principle is that the relationship between the parent and subsidiary is so intertwined that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction."[33]

By arguing that McNational is subject to the Court's general jurisdiction based on the jurisdictional contacts of NMR-LA and Excell Marine, Florida Marine implicitly concedes that without the contacts of these subsidiaries, McNational is not "at home" in Louisiana.  McNational, on the other hand, seemingly concedes that *if* the contacts of its subsidiaries are imputed to it, this Court may exercise personal jurisdiction over McNational.  The disagreement, and the focus of the parties' briefing, is whether McNational is, in fact, the alter ego of NMR-LA and Excell

---

[30] *Id.* at 379 (citing *Burger King,* 471 U.S. at 472).

[31] *See Freudensprung,* 379 F.3d at 346 (first citing *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335 (1925); then citing *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); and then citing *Access Telecom, Inc. v. MCI Telecomm., Corp.,* 197 F.3d 694, 717 (5th Cir.1999)).

[32] *See, e.g., id.* at 345; *Hargrave,* 710 F.2d at 1159; *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 867–68 (E.D. La. 2012), *aff'd,* 742 F.3d 576 (5th Cir. 2014).

[33] *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, No. 09-02047, 2017 WL 1476595, at *18 (E.D. La. Apr. 21, 2017), *aff'd,* 811 F. App'x 910 (5th Cir. 2020).

Marine.[34] For the reasons explained below, the Court finds that it is not, and therefore, the contacts of NMR-LA and Excell Marine cannot be imputed to McNational for purposes of jurisdiction. Florida Marine's alternative arguments are also unavailing. Accordingly, Florida Marine has failed to make a *prima facie* showing that the Court may exercise personal jurisdiction over McNational, and the Court finds that McNational's motion should be granted and the claims against it dismissed.

### A.    Alter Ego Analysis

The parties appear to agree that *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983) provides the appropriate test for determining whether to impute NMR-LA's and Excell Marine's jurisdictional contacts to McNational based on the alter ego theory.[35] In *Hargrave*, the Fifth Circuit considered whether a parent corporation exerted "such domination and control over its subsidiary" that the two entities were "one and the same for purposes of jurisdiction."[36] Although the Court recognized that "all the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined," the Court considered seven factors—now dubbed "the *Hargrave* factors"—to be particularly relevant to its analysis.[37]

The *Hargrave* factors are (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common

---

[34] The Court notes that throughout its briefing McNational argues that MAF, as opposed to McNational, is the proper third-party defendant in this matter and that NMR-LA's contacts cannot be used to obtain personal jurisdiction over MAF. In doing so, McNational conflates the issues of parent-subsidiary liability and parent-subsidiary jurisdiction. Whether McNational or MAF is the proper party for purposes of liability in this action is not the issue before the Court. Rather, the only question before the Court is the jurisdictional question, which the Court must answer only as to the named third-party defendant, McNational. Any reference to MAF for purposes of liability or jurisdiction is therefore irrelevant to the instant motion.

[35] *See* R. Docs. 41, 68 (analyzing the *Hargrave* factors). *See also Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F.App'x 326, 330 n.5 (5th Cir. 2011) ("Where federal jurisdiction is based on diversity of citizenship, this court applied the applicable state law to determine whether contacts should be imputed to a parent company due to an alter-ego or agency relationship. . . . The *Hargrave* factors construe Texas state law. . . . *This court has also adopted the* Hargrave *factors in cases construing federal common law*.") (emphasis added).

[36] *Hargrave*, 710 F.2d at 1159–61.

[37] *Id.* at 1160.

officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.[38]

The Court now considers these factors in turn to determine whether McNational exerts such domination and control over NMR-LA or Excell Marine that it should be considered one and the same as either subsidiary for purposes of jurisdiction.

### i.      Stock Ownership

It is undisputed that McNational indirectly owns 100% of NMR-LA's stock[39] and directly owns 100% of Excell Marine's stock.[40]

### ii.      Separate Headquarters

The location of McNational's headquarters, or whether it has a headquarters at all, is in dispute. Florida Marine cites to deposition testimony indicating that McNational's Chief Executive Officer works out of his truck and that other McNational executives and employees work at locations throughout the United States.[41]  Nevertheless, Florida Marine concedes that the location housing the most McNational employees is located in South Point, Ohio but notes that the Ohio office is maintained by one of McNational's other subsidiaries, McGinnis, Inc.[42]  Relying on these facts, Florida Marine argues that McNational has no headquarters at all and, thus, there is a "lack of separate headquarters," which supports a finding of jurisdiction over McNational. The Court is not persuaded by this argument. Regardless of whether McNational has no headquarters or whether

---

[38] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (citing *Hargrave*, 710 F.2d at 1160).

[39] One of McNational's other subsidiaries, National Maintenance & Repair, Inc., directly owns 100% of NMR-LA's stock. However, McNational owns 100% of National Maintenance & Repair, Inc.'s stock; therefore, McNational indirectly owns 100% of NMR-LA's stock. *See* R. Doc. 41-2.

[40] *Id.*

[41] *See* R. Doc. 41 at 8–9.

[42] *Id.* at 9.

its headquarters is at one of the locations housing its executives throughout the United States, there is no evidence that McNational shares a headquarters with NMR-LA or Excell Marine.[43]

### iii.      Common Officers and Directors

It is undisputed that McNational has the same officers and directors as NMR-LA and Excell Marine.[44]

### iv.      Observance of Corporate Formalities[45]

Florida Marine concedes that McNational and its subsidiaries observe certain corporate formalities, such as registering each subsidiary as a separate company and filing required documentation, i.e., annual reports, with the respective Secretary of State's office where each company is located.[46]  It is also undisputed that McNational and NMR-LA each hold regular board meetings and keep separate minutes.[47]  Thus, based on the evidence presented, the Court finds that McNational, NMR-LA, and Excell Marine each observe corporate formalities.

### v.      Separate Accounting Systems

Florida Marine asserts that McNational and its subsidiaries utilize a "centralized accounting system."[48]  The evidence, however, indicates the entities employ separate accounting

---

[43] It is undisputed that NMR-LA's headquarters are in Louisiana. *See* R. Doc. 13-2 ¶ 35. The location of Excell Marine's headquarters was not addressed by either party.

[44] *See* R. Doc. 41-2.

[45] Florida Marine contends that these corporate formalities are not indicative of the actual operation of McNational and its subsidiaries. In so arguing, Florida Marine relies on facts relevant to the other *Hargrave* factors to ultimately contend that those facts should carry more weight than baseline considerations such as filing articles of incorporation or annual reports. Once the Court has analyzed all the factors, it will consider the appropriate weight to allot to each. That question is irrelevant at this point in the analysis, though, where the Court is merely determining the outcome of each factor individually.

[46] R. Doc. 41 at 10.

[47] R. Doc. 13-2 ¶ 23. Whether Excell Marine also holds regular board meetings and keeps separate minutes was not addressed by either party. The Court does not presume one way or the other. Nor does it need to. This evidence, with respect to NMR-LA, only further supports the Court's finding that the entities observe corporate formalities; it is not dispositive of the issue.

[48] R. Doc. 41 at 12.

systems but are all *supervised or overseen* by McNational's Director of Finance, as well as William Jessie, who is the Chief Financial Officer for McNational and each of its subsidiaries.

McNational and its subsidiaries keep separate accounting records, such that each entity records its own profits and losses in its respective accounting ledger.[49]   The companies have separate bank accounts, and their funds are not commingled.[50]   The only time a subsidiary's profits have been transferred to McNational is through a dividend.[51]   Each entities' bills are processed by its own staff,[52] and each entity handles its own payroll.[53]   While the financial statements of McNational and its subsidiaries are all prepared by McNational, and there is general supervision and oversight by McNational over its subsidiaries' accounting systems and operations, these facts are not evidence of any "centralized accounting system" between the companies, especially in light of the overwhelming evidence of the separation discussed above.

Florida Marine points out that McNational and its subsidiaries all have access to a consolidated, single line of credit.   Although each entity is listed as a borrower and may draw down on the line of credit when needed, the Court does not find this consolidated line of credit is evidence of a consolidated accounting system by McNational and its subsidiaries.   Indeed, despite all being listed as borrowers, each company is responsible for its respective principal and interest related to the sums borrowed from the line of credit.[54]   And when one of the subsidiaries draws down on the line of credit, the draw is recorded as a liability on that subsidiary's ledger, not McNational's.[55]   Thus, the Court finds the manner in which McNational and its subsidiaries handle

---

[49] R. Doc. 13-2 ¶ 22.
[50] *Id.* ¶ 24.
[51] R. Doc. 41-3 at 15–16.
[52] *Id.* at 8.
[53] R. Doc. 41-1 at 50.
[54] *Id.* at 107.
[55] R. Doc. 41-3 at 17.

the accounting related to this line of credit only further demonstrates their separate accounting systems.

###### vi.      *Control Over General Policies and Control Over Daily Operations*

The evidence indicates that McNational has significant supervision or control over its subsidiaries' general policies but that the subsidiaries control their own daily operations. McNational distributes a Procedure Manual to all of its subsidiary companies and a Safety Manual to its vessel operating entities.  The Procedure Manual contains policies applicable to all subsidiaries, like employment and hiring procedures, and other policies applicable to its vessel-operating subsidiaries, such as proper maintenance procedures.[56]  The Safety Manual sets out additional policies such as emergency response plans, accident reporting and investigating procedures, and the required training for vessel personnel.[57]  Although McNational is the source of these policies, each subsidiary is responsible for implementing these policies within its respective company and does so through its own employees.[58]

McNational also controls the general policies related to insurance for its subsidiaries. McNational's Insurance and Claims Manager, Michael Tolin, testified that he handles the solicitation and retention of insurance policies through which McNational and the individual subsidiaries or their employees are insured.  The types of policies include property, casualty, liability, health, dental, vision, and supplemental policies like accident, critical illness, and short-term disability.[59]

---

[56] R. Doc. 41-4.
[57] R. Doc. 41-5.
[58] R. Doc. 41-1 at 59–60, 83–84.
[59] *Id.* at 93–94.

10

With respect to daily operations, however, Florida Marine concedes that the subsidiaries are in control of their own day-to-day operations.[60]  Despite its concession, Florida Marine argues that this factor should fall in its favor due to McNational's involvement in the subsidiaries' daily operations.[61]  The involvement Florida Marine refers to, however, relates to areas that McNational controls or oversees through its general policies.[62]  This involvement is not indicative of control by McNational over the daily operations of its subsidiaries.  Additionally, it is undisputed that NMR-LA manages its own supplies, employees, physical plants, and how it provides services to its customers.[63]

Thus, based on the evidence presented, the Court finds McNational has control over general policy, but NMR-LA and Excell Marine have control over their respective daily operations.

### vii.        Factor-Based Determination

McNational indirectly owns 100% of NMR-LA's stock and directly owns 100% of Excell Marine's stock; the three entities share all the same officers and directors; and McNational has control over NMR-LA's and Excell Marine's general policies.  Nevertheless, McNational does not share a headquarters with NMR-LA or Excell Marine; the entities all observe corporate formalities and have separate accounting systems; and the subsidiaries control their own daily operations.

The Fifth Circuit has explained that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two

---

[60] R. Doc. 41 at 15.

[61] *Id.*

[62] *See id.* at 15–17 (discussing facts related to McNational executives who oversee the general policies applicable to NMR-LA, such as insurance, safety, and human resources).

[63] R. Doc. 13-2 ¶ 18.  Neither party provided any direct evidence of this type as to Excell Marine. Nevertheless, it is Florida Marine's burden to make a *prima facie* showing of control by McNational over Excell Marine's daily operations, and Florida Marine concedes that "the actual day-to-day work" of each subsidiary is not run by McNational.  R. Doc. 41 at 15.  Thus, the absence of this evidence as to Excell Marine is not critical.

corporations.[64]   And "[w]here a parent and subsidiary observe corporate formalities, the [party seeking to invoke the Court's jurisdiction] has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parents."[65]   Courts generally require "proof of control by the parent over the internal business operations and affairs of the subsidiary," and "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship."[66]

Similar to the Fifth Circuit's finding in *Hargrave*, this Court finds that, based on the evidence presented, McNational maintains a degree of corporate separation from NMR-LA and Excell Marine that is more than superficial, and the policymaking authority held and exercised by McNational is no more than that appropriate for a sole shareholder of a corporation.[67] Accordingly, McNational is not the alter ego of NMR-LA or Excell Marine for purposes of attributing the subsidiaries' jurisdictional contacts to McNational.[68]

## B.    McNational's Forum Contacts

Because McNational is not the alter ego of NMR-LA or Excell Marine, this Court may only exercise personal jurisdiction over McNational if its own contacts with Louisiana are so

---

[64] *Hargrave*, 710 F.2d at 1160.

[65] *Adm'rs of Tulane Educ. Fund*, 450 F.App'x at 331 (first citing *Jackson*, 615 F.3d at 588; then citing *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); and then citing *Access Telecom, Inc.*, 197 F.3d at 717).

[66] *Hargrave*, 710 F.2d at 1160.

[67] *Id.* at 1161.

[68] *See, e.g.*, *Jackson*, 615 F.3d at 588 ("Here, there are some factors in favor of imputing contacts and some factors against. Even where some factors suggest that one entity is the alter ego of another, the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos."); *Dalton*, 897 F.2d at 1363 (declining to find an alter ego even though one entity owned 100% of its subsidiaries, was responsible for corporate policy, the subsidiaries funneled revenues into centralized accounts, and filed consolidated federal tax returns because those factors were "outweighed, albeit modestly" by the entities' observation of corporate formalities, the subsidiaries' responsibility for their daily operations, the maintenance of separate accounting systems, and the filing of separate state tax returns).

"continuous and systematic" as to render McNational "essentially at home" in Louisiana.[69] There is no evidence that McNational, on its own, has any contacts with Louisiana. Florida Marine's theory of jurisdiction over McNational is based solely on McNational's contacts with Louisiana through its subsidiaries. It is undisputed that McNational does not do business in Louisiana and has no offices, property, or operations in Louisiana.[70] Accordingly, this Court cannot exercise personal jurisdiction over McNational because to do so would violate the due process guarantees afforded to McNational by the Constitution.

### C.      Waiver of Objection to Jurisdiction

Florida Marine alternatively argues that McNational's consent to this Court's jurisdiction in an unrelated matter in 2013 should constitute a waiver of its objection to personal jurisdiction in this matter. This argument has absolutely no basis in law and is wholly without merit. Florida Marine misleadingly refers to language from two Fifth Circuit opinions to support its position. But neither the language quoted nor the cases cited provide legitimate support for Florida Marine's argument.

In the first case, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002), numerous plaintiffs sued Thoroughbred Power Boats Inc. ("Thoroughbred") alleging they sustained injuries caused by the defective condition of a boat manufactured by Thoroughbred. Thoroughbred answered plaintiffs' complaints but did not question or raise the issue of personal jurisdiction.[71] After the plaintiffs were granted partial summary judgment in their favor, they discovered Thoroughbred had ceased doing business.[72] The plaintiffs then filed amended

---

[69] *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear*, 564 U.S. at 919). Florida Marine does not contend that the Court may exercise specific jurisdiction over McNational in this matter; thus, the Court's analysis is limited to whether it may exercise general jurisdiction over McNational.
[70] R. Doc. 13-2 ¶ 5.
[71] *Patin*, 294 F.3d at 643.
[72] *Id.*

complaints naming two additional defendants, Steven Stepp ("Stepp") and Velocity Power Boats ("Velocity").[73]   The plaintiffs alleged that Velocity was a "successor corporation" to Thoroughbred and that Velocity and Thoroughbred were both alter egos of Stepp.[74]   In response, Stepp and Velocity filed a motion to dismiss arguing that the district court lacked subject matter jurisdiction over them.[75]   On appeal, the Fifth Circuit considered whether Thoroughbred's waiver of personal jurisdiction could be imputed to Stepp and Velocity.[76]   *Thus, the question before the court involved a waiver that had occurred in the same case.*   With respect to the effect of the waiver on Stepp, the Fifth Circuit explained, ". . . just as **a corporation that has previously submitted to the jurisdiction of a court cannot subsequently object to that court's exercise of jurisdiction on due process grounds,** *see* **Fed.R.Civ.P. 12(h)**, an individual alter ego of a corporation that has waived personal jurisdiction cannot subsequently attempt to negate that waiver."[77]

The text in bold is what Florida Marine provided to this Court to support its waiver argument in the instant matter.   Considering the full context, however, it is clear that language describes a corporation's inability to subsequently raise the defense of lack of personal jurisdiction *in the same suit* in which the waiver under Federal Rule of Civil Procedure 12(h) previously occurred.[78]   That authority is wholly inapplicable here, where the "waiver" on which Florida Marine relies occurred in prior, unrelated lawsuit.

---

[73] *Id.*
[74] *Id.*
[75] *Id.* at 643–44.
[76] *Id.* at 652–56.
[77] *Id.* at 655 (emphasis added).
[78] Lack of personal jurisdiction is a defense to a claim for relief. *See* FED. R. CIV. P. 12(b)(6). Under Federal Rule of Civil Procedure 12(h), this defense is waived by failing to follow certain procedures in the lawsuit involving the claim to which the defense relates.

Next, Florida Marine relies on a portion of the Fifth Circuit's opinion in *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir. 2001), to support its position that "an objection to personal jurisdiction is waivable, and can be deemed waived, when the objecting party's actions do not 'reflect a continuing objection' to this Court's power to act over it."[79] Yet again, when the viewing lens is adjusted to capture the full context, it is patently clear the quoted language does not apply in this instance. Indeed, the relevant portion of the Fifth Circuit's opinion states:

> PaineWebber . . . contends that Chase–Switzerland has submitted to the jurisdiction of the Southern District of Texas by its conduct *in the instant case*. More specifically, PaineWebber argues that Chase–Switzerland has waived any objection to personal jurisdiction by seeking the "affirmative relief" of a stay pending appeal and an injunction to prevent PaineWebber from proceeding with arbitration of the third-party claims during the pendency of this appeal.
>
> *PaineWebber is right that a party may waive any jurisdictional objections if its conduct does "not reflect a continuing objection to the power of the court to act over the defendant's person."* PaineWebber is also right that when "a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." But PaineWebber is dead wrong in suggesting that Chase–Switzerland, by making a motion based on the defense of personal jurisdiction, has thereby submitted to the court's jurisdiction.[80]

The quoted language thus explains that a waiver of a jurisdictional objection can occur by the party's conduct *in the same case* in which the objection would be or was asserted. It does not support Florida Marine's incorrect contention that a failure to raise the objection in a prior, unrelated matter constitutes a permanent waiver of the objection in every future matter brought against the entity in that court.

---

[79] R. Doc. 41 at 18–19.
[80] *PaineWebber, Inc.*, 260 F.3d at 460–61 (emphasis added) (internal citations omitted).

Florida Marine has not cited to, nor is this Court aware of, any law that would permit the Court to find that McNational waived it's right to object to the Court's exercise of personal jurisdiction over it in this case by failing to raise the objection in a prior, unrelated case.[81] Accordingly, the Court rejects Florida Marine's argument.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that McNational, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against McNational, Inc. are hereby **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, this 16th day of January 2024.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[81] *Cf. Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 530 (E.D. Tex. 2021) (analyzing whether an action could have been originally filed in the proposed transferee forum, finding that there was no evidence that the transferee forum had personal jurisdiction over the defendant and explaining that to the extent the defendant would argue that it consented to jurisdiction in the potential transferee forum by litigating a prior case in that court, that prior litigation was insufficient to establish personal jurisdiction because "[i]n general, consent to suit in one instance does not operate as a waiver of jurisdiction forevermore.").