UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICHOLAS REED MAGEE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3835** |
| **FLORIDA MARINE, LLC, ET AL** | **SECTION: "P" (5)** |

## ORDER AND REASONS

Before the Court are several motions in limine filed by the parties. Defendants, Florida Marine, LLC, Florida Marine Transporters, LLC, and PBC Management, LLC (collectively, "Florida Marine") seek: to exclude the testimony of Steven Cunningham;[1] to exclude the testimony of Michael Berry;[2] to exclude or limit the testimony of Dr. Charles A. Czeisler;[3] and to exclude or limit certain testimony regarding U.S. Coast Guard Form CG-719K.[4] Plaintiff, Nicholas Reed Magee, seeks: to limit the testimony of Drs. Duplantier, Thompson, Fein, and Kaplan to the four corners of their reports;[5] to limit the testimony of Defendants' vocational rehabilitation and economist experts;[6] to exclude Florida Marine's January 29, 2024 job offer from evidence;[7] and to strike Florida Marine's motion in limine regarding U.S. Coast Guard Form CG-719K.[8] The motions are resolved as set forth herein.

**I.    BACKGROUND**

This action arises out of injuries allegedly sustained by Plaintiff Nicholas Reed Magee while working as a deckhand aboard the M/V JOHN PASENTINE II ("Vessel") on March 6,

---

[1] R. Doc. 90.
[2] R. Doc. 85.
[3] R. Doc. 91.
[4] R. Doc. 183.
[5] R. Doc. 86.
[6] R. Doc. 87.
[7] R. Doc. 182.
[8] R. Doc. 187.

2022.[9] Plaintiff alleges the Vessel is owned by Florida Marine and that Plaintiff was employed by Florida Marine as a Jones Act seaman at the time of the incident.[10] According to Plaintiff, the Vessel was on the Ohio River near Catlettsburg, Kentucky when the Master of the Vessel instructed him to unload material from the Vessel by traversing a barge and dock, and while doing as instructed, Plaintiff fell into the river and sustained injuries to his lungs, back, knees, legs, neck, and other parts of his body.[11]

Plaintiff alleges his injuries are a result of Florida Marine's negligence and the unseaworthiness of the Vessel.[12] Plaintiff thus seeks to recover various types of damages from Florida Marine.[13] Plaintiff also alleges that, as a result of the incident, he was rendered unfit for his job as a seaman.[14] Accordingly, in addition to damages, Plaintiff seeks maintenance and cure benefits from the date he was rendered unfit for duty until maximum cure is achieved.[15]

At the time many of the instant motions were filed, this matter was set to be tried before a jury. Plaintiff subsequently moved to withdraw his jury demand, and this matter is now set to proceed as a bench trial.

## II. DISCUSSION

The Court considers the parties' motions below, many of which seek to exclude or limit the testimony of the opposing party's expert witnesses pursuant to Federal Rule of Evidence 702. Under Rule 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

---

[9] R. Doc. 1 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 3–5.
[13] *Id.* at 5–6.
[14] *Id.* at 5. As of the date the Complaint was filed, Plaintiff allegedly remained unfit and incapable of returning to duty as a seaman. *Id.*
[15] *Id.* at 5–6.

2

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[16]

### A. Florida Marine's Motion in Limine to Exclude the Testimony of Steven Cunningham

Florida Marine seeks to exclude the testimony of Steven Cunningham on the basis that his testimony is not helpful to the factfinder because it consists solely of conclusions the factfinder could reach by using common sense.[17] While Florida Marine is correct that proffered expert testimony should be excluded if it relates only to common sense issues the Court, in its role as trier of fact, needs no expert assistance to resolve,[18] Florida Marine is incorrect insofar as it classifies Cunningham's testimony as such.

Cunningham is a licensed Master Mariner with over twenty-six years of experience. He holds a Master of Science degree in the Professional Practice of Marine Accident Investigation—"a specialized degree focused on the forensic analysis and reconstruction of electronic navigation data for investigations of marine accidents."[19] Cunningham opines the fuel barge was in motion at the time of Plaintiff's incident and that the movement was most likely a result of the vessel TRI STATE passing by just minutes before.[20] To reach this opinion, Cunningham obtained Automatic Identification System records which revealed the TRI STATE passing the location of the accident, the time at which it passed, the speed it was traveling, and the overall tow length of the TRI STATE.[21] Using this data as well as his specialized knowledge regarding the effects a passing

---

[16] FED. R. EVID. 702.
[17] R. Doc. 90; R. Doc. 90-1 at 5, 7.
[18] *See id.* at 5 (citing *Richardson v. SEACOR Lifeboats, LLC*, No. 14-1712, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015)).
[19] R. Doc. 90-5 at ¶ 1.2.
[20] R. Doc. 90-5 at ¶ 1.4.
[21] *Id.* at ¶¶ 3.1–3.2.

vessel has on a moored barge and the length of such effects, Cunningham determined that the forces generated by the interaction with the passing vessel (the TRI STATE) likely caused the barge to surge, sway, and yaw.[22] The Court agrees with Plaintiff that Cunningham's analysis and opinions fall outside of the common knowledge of the factfinder and that it is more likely than not that Cunningham's testimony will help the trier of fact understand the evidence and determine a fact at issue in this case. Accordingly, Florida Marine's Motion in Limine to Exclude the Testimony of Steven Cunningham is denied.

### B. Florida Marine's Motion in Limine to Exclude the Testimony of Michael Berry

Florida Marine seeks to exclude the testimony of Michael Berry on the basis that his opinions would not be helpful to the trier of fact.[23] According to Berry's expert report, he "was asked to examine the facts and circumstances" surrounding Plaintiff's incident on March 6, 2022, and "to render [his] opinions as a professional mariner with two decades of experience in the towboat industry regarding the incident."[24] Berry's report offers six main opinions:

> (1) Capt. Spencer [sic] testimony confirms he was not qualified or trained to hold the position of Captain/Master on the JPEII as required by *SMS-06-04 Master's Safety Responsibility and Authority, SMS-07-06 Vessel Manning, and 46 CFR 104.515 Training Requirements*.
>
> (2) Capt. Spencer and Pilot Howe's testimony confirms they failed to comply with FMT's TSMS Fatigue Management and Coast Guard Fatigue Prevention Regulation 46 U.S. Code 11304. The testimony confirms that Capt. Spencer and Pilot Howe's failure to comply with these policies and regulations resulted in Mr. Magee being overworked and fatigue playing a role in Mr. Magee's incident.
>
> (3) Capt. Spencer and Pilot Howe [sic] testimony confirms they failed to complete a Job Safety Analysis before instructing the deck crew to dispose of the vessel trash. Had Capt. Spencer and Pilot Howe properly assessed the risks associated with sending crew out to throw trash away at the Mid America Fuel, they would have decided to wait to throw away trash at a different facility.

---

[22] *See id.* at ¶¶ 3.2, 4.1.
[23] R. Doc. 85.
[24] R. Doc. 85-2 at 2.

(4) The JPEII and Fuel Barge moved while Mr. Magee was stepping from the fuel barge to the barge dock.

(5) FMT did not save JPEII Rose Point data, radar data, audio recordings and video recordings as required by 46 CFR 4.05-15 Voyage records, retention of. This information would have been valuable to [Berry].

(6) FMT failed to report the incident to the Coast Guard and failed to conduct a proper investigation into the accident in violation of federal law.

With respect to Berry's opinions regarding whether Florida Marine, its Captain, and/or its Pilot acted in a manner that violated Florida Marine's company policies and federal regulations, the Court finds these opinions are not helpful to the trier of fact—here, the Court—because the Court can adeptly assess the evidence in this case and make such a determination itself.[25]  Indeed, upon review of Berry's expert report, the Court finds there is no expertise required for the opinions Berry offers regarding the violation of company policies or federal regulations.[26]  The Court therefore grants Florida Marine's motion to the extent it seeks to exclude such testimony.  To the extent Berry's report includes opinions pertaining to the standard of care in the industry, however, these opinions are not excluded by this order.[27]

Additionally, with respect to Berry's opinion regarding the movement of the fuel barge, the Court finds Plaintiff has shown this testimony may help the Court to understand the evidence in this case or to determine a fact in issue, and that this testimony does not fall within the common knowledge of the Court as the trier of fact.  As Plaintiff explains, Berry applied his own specialized knowledge and experience to determine that the passing TRI STATE caused the fuel barge from

---

[25] *See, e.g.*, *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (finding that expert testimony was unnecessary, and thus excludable, where the trier of fact "could adeptly assess the situation using only their common experience and knowledge").
[26] *See Bouton v. Kim Susan, Inc.*, No. 96-902, 1997 WL 61450, at *2 (E.D. La. Feb. 6, 1997) (excluding proffered expert testimony based on same finding).
[27] For example, although Opinion 3(a) in his report falls under Opinion (3), which relates to the violation of company policy and federal regulations, Opinion 3(a) itself appears to relate to the standard of care in the industry. *See* R. Doc. 85-2 at 20–21. This opinion, and any others like it, are not excluded.

which Mr. Magee was stepping to move. Berry analyzes the AIS data of the JPEII and a passing vessel, the TRI STATE; he then elaborates on the speed of the passing TRI STATE as well as its passing distance to determine that the interaction caused the fuel barge to move based on his education, training, licenses, and experience.[28] The Court therefore denies Florida Marine's motion to the extent it seeks to exclude such testimony on "helpfulness" grounds.

Accordingly, Florida Marine's Motion in Limine to Exclude the Testimony of Michael Berry is granted in part and denied in part, as explained herein.

### C. Florida Marine's Motion in Limine to Exclude or Limit Certain Testimony of Dr. Charles A. Czeisler

Florida Marine seeks to exclude or limit certain testimony of Dr. Charles A. Czeisler on the basis that he provides opinions beyond the scope of his purported expertise, making those opinions unreliable and unhelpful to the trier of fact.[29] In particular, Florida Marine contends Dr. Czeisler "is offered as an expert in the field of sleep medicine, and, yet, he opines on whether Florida Marine and its employees acted reasonably under the circumstances despite having no background in the marine industry, let alone marine safety." Florida Marine thus seeks an order precluding Dr. Czeisler from testifying about the reasonableness of Florida Marine's alleged actions and/or omissions and strictly limiting Dr. Czeisler's testimony to those opinions that are within the scope of his expertise.

In response, Plaintiff avers Dr. Czeisler is qualified to offer opinions on marine safety because he has extensive experience consulting in the maritime industry. In particular, Plaintiff cites to a number of instances in which Dr. Czeisler has worked with or presented to industry groups regarding best policies and practices for fatigue risk management. Plaintiff also contends

---

[28] *See* R. Doc. 115 (citing R. Doc. 115-1 at 27).
[29] R. Doc. 91.

Florida Marine's argument that Dr. Czeisler is not qualified to testify in the field of marine safety is an arbitrary limitation of Dr. Czeisler's more general expertise in the areas of sleep, fatigue, and work-rest management. Indeed, according to Dr. Czeisler's report, he is the Director of the Harvard Work Hours, Health and Safety Group, "which performs research on the impact of work schedule design on the health and safety of workers . . . and provides education to organizations engaged in round-the-clock operations."[30] Dr. Czeisler also "founded the Center for Design of Industrial Schedules, which [he] directed for over a decade, and which consulted with businesses on the application of sleep and circadian principles in the design of work schedules, pioneering the field of fatigue risk management consulting."[31] Plaintiff thus concludes Dr. Czeisler has the requisite knowledge to determine (1) whether fatigue was a factor in causing Plaintiff's injuries and (2) whether the fatigue management policies of Florida Marine were sufficient.

The Court agrees that Dr. Czeisler's expertise is sufficient to provide opinions related to those two topics. Upon review of Dr. Czeisler's report, however, at least some of his proffered opinions go beyond the scope of his expertise.[32] The Court will not allow Dr. Czeisler to testify regarding matters outside of the scope of his expertise, but Dr. Czeisler is permitted to provide opinion testimony regarding whether fatigue was a factor in causing Plaintiff's injuries[33] and whether Florida Marine's fatigue management policies and practices were adequate or sufficient.

---

[30] R. Doc. 91-2 at 2.
[31] *Id.* at 5.
[32] For example, on page 58 of his report, Dr. Czeisler opines that "[a] reasonably careful Captain of a vessel such as the John Pasentine II would have ensured that [Plaintiff] would not have worked such excessive hours, and would have ensured that his work hours were in compliance with [Florida Marine's TSMS];" and on page 60 of his report, Dr. Czeisler opines that Florida Marine "failed to enforce and itself violated its own policies by requiring [Plaintiff] to embark on a voyage on a severely understaffed vessel that would result in his violating the work-hour policy."
[33] The Court recognizes that Florida Marine did not challenge this opinion as falling outside of Dr. Czeisler's expertise. The Court nevertheless includes it in the list of admissible testimony because Plaintiff specifically references it in his opposition.

Accordingly, Florida Marine's Motion in Limine to Exclude or Limit the Testimony of Dr. Charles A. Czeisler is granted in part and denied in part, as explained herein.

### D. Florida Marine's Motion in Limine to Exclude or Limit Certain Testimony Regarding U.S. Coast Guard Form CG 719-K

Florida Marine seeks to exclude Dr. Susan Kahn's testimony regarding Form CG-719K on the basis that the testimony is nothing more than unsupported speculation and thus irrelevant.[34] As an initial matter, Plaintiff challenges the timing of Florida Marine's motion, and filed a motion to strike the motion in limine on the basis that it was untimely filed.[35] The deadline to file motions regarding the admissibility of expert testimony was January 2, 2024; yet, Florida Marine filed this motion in limine on June 12, 2024. Florida Marine attempts to argue that because it challenges the admissibility of Dr. Kahn's testimony under Federal Rule of Evidence 402 rather than Rule 702, the January 2, 2024 deadline does not apply. As Plaintiff points out, however, this is a distinction without difference. The deadline for challenging the admissibility of expert testimony on any ground was January 2, 2024.[36] The Court nevertheless exercises its discretion and considers Florida Marine's untimely motion.

In her expert report dated November 8, 2023, Dr. Kahn states:

> Since his work injury and subsequent related health events, Mr. Magee has not been able to return to work, given the requirements of his marine-based job. As per the Coast Guard form (CIG-719K [*sic*]) that mariners must get a physician to sign off to confirm that the mariner "has the physical strength, agility, and flexibility to perform all of the items" to be able to return to his previous job, he would need to satisfy the following minimum requirements needed to perform tasks considered necessary for performing ordinary and emergency response shipboard functions:
>     1. Has no disturbance in sense of balance;
>     2. Is able, without assistance, to climb up and down vertical ladders and stairways;

---

[34] R. Doc. 183.
[35] R. Doc. 187.
[36] R. Doc. 36 ("[M]otions in limine regarding the admissibility of expert testimony[] shall be filed and served no later than January 2, 2024.").

> 3. Is able, without assistance, to step over a doorsill or coaming of 24 inches (600 millimeters) in height. Able to move through a restricted opening of 24 x 24 inches.
> 4. Is able to, without assistance, to lift at least a 40 pound (18.1 kilograms) load off the ground, and to carry, push, or pull the same load.
> 5. Is able, without assistance, to grasp, lift, and manipulate various common shipboard tools.
> 6. Is able to, without assistance, to crouch, kneel, and crawl.
> 7. Is able to, without assistance, to intermittently stand on feet for up to four hours with minimal rest periods.
>
> Based on my assessment of Mr. Magee's case, I believe he would not be able to satisfy requirements 2, 3, 4, 5, 6 and 7.[37]

Florida Marine challenges Dr. Kahn's proffered opinion as irrelevant, arguing it is based on pure speculation. Florida Marine takes issue with the fact that Dr. Kahn did not perform a physical examination of Plaintiff or ask Plaintiff to demonstrate his abilities to perform the listed tasks. As Dr. Kahn explained in her deposition, however, she was not asked to complete the form as someone who is specifically evaluating Plaintiff's ability to work; she was asked to assess whether *she believed* he would be able to satisfy those criteria.[38] She further explained that her opinion—that Plaintiff would not be able to satisfy requirements two through seven—is based on her interview with Plaintiff, what he described in terms of his symptoms, and also her decades of experience managing other patients with moderate to severe post-thrombotic syndrome ("PTS").[39]

Florida Marine also argues Dr. Kahn's opinion is not based on record facts because Dr. Kahn did not know: (1) that another healthcare provider, who examined Plaintiff on August 30, 2022, for purposes of completing the Form CG-719K, determined Plaintiff could complete each of the tasks on the list; and (2) that a pulmonologist and orthopedist had previously cleared Plaintiff to return to work in the maritime field prior to the August 30, 2022 evaluation. But, Florida Marine's argument completely ignores that in October of 2022, Florida Marine's own independent

---

[37] R. Doc. 188-8 at 6.
[38] R. Doc. 183-6 at 17–18.
[39] R. Doc. 183-6 at 15–16.

9

medical examiner contradicted the findings of the original orthopedist regarding Plaintiff's ability to return to work.[40] Additionally, in September 2023, a different orthopedist opined that Plaintiff can only return to light or sedentary type work because of his inability to perform certain tasks.[41] That past medical providers previously determined Plaintiff had certain capabilities before his PTS developed does not render Dr. Kahn's opinion "baseless and not based on record facts."

For all these reasons, the Court rejects Florida Marine's argument that Dr. Kahn's testimony is based on pure speculation and thus lacks any tendency to make a fact of consequence more or less probable than it would otherwise be.[42] Florida Marine may explore its critiques of Dr. Kahn's testimony on cross-examination or with countervailing expert testimony.

Accordingly, Florida Marine's Motion in Limine to Exclude or Limit Certain Testimony Regarding U.S. Coast Guard Form CG-719K and Plaintiff's Motion to Strike are both denied.

### E. Plaintiff's Motion in Limine to Limit the Testimony of Drs. Duplantier, Thompson, Fein, and Kaplan to the Four Corners of Their Reports Under FRCP 26

Plaintiff seeks an order limiting the testimony of Florida Marine's medical experts to the opinions contained in the four corners of their reports pursuant to Federal Rule of Civil

---

[40] R. Doc. 188-2 at 4 (Dr. Duplantier's October 27, 2022 report).
[41] *See* R. Doc. 188-8 at 6 (Dr. Kahn stating she "agree[s] with Dr. Bostick's note from September 20, 2023 that Mr. Magee is limited to 'sedentary or even light-based work.'"); R. Doc. 87-4 (record from visit with Dr. Bostick on September 20, 2023).
[42] The foregoing reasons also distinguish this case from *Lowery v. ACE Am. Ins. Co.*, No. 17-248, 2009 WL 960158 (M.D. La. Feb. 27, 2019)—the case upon which Florida Marine relies. In *Lowery*, the court excluded a vocational rehabilitation expert's future-damages opinion that assumed the plaintiff's injuries would prevent him from continuing to work as a paramedic. *Id.* at *2. There, the expert's assumption was based on the plaintiff's "concern" that he may not be able to "tolerate" the work much longer—not on the plaintiff's medical or employment records. *Id.* at *1. But this assumption was in direct contradiction with the record that showed the plaintiff had returned to full-time work as a paramedic about three months after the injury-causing accident; plaintiff was still working as a paramedic at the time the opinion was rendered; no doctor had placed him on any restriction that affected his ability to work as a paramedic; and no doctor opined that he will be required to quit his job. *Id.* The *Lowery* court thus found the expert's opinion inadmissible under Rule 702 because it was unreliable and separately inadmissible under Rule 402 because it was irrelevant. *Id.* As to the relevance finding, the court explained that because the expert's "opinion is 'based on totally incorrect facts' and 'unfounded assumptions' about [the plaintiff's] ability to continue working as a paramedic, the opinion ha[d] no tendency to make any fact of consequence more or less probable than it would otherwise be." *Id.* (citing *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 11131 (5th Cir. 1996)). The same cannot be said here, for the reasons stated above.

Procedure 26.[43] Under Rule 26, expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."[44] Thus, in this district, an expert's testimony at trial has generally been limited to the four corners of the expert's report.[45] Florida Marine argues that Plaintiff's motion is premature and contrary to law. The Court disagrees. The trial testimony of Florida Marine's experts, like all experts in this case, shall be limited to the four corners of their expert reports.

Accordingly, Plaintiff's Motion in Limine to Limit the Testimony of Drs. Duplantier, Thompson, Fein, and Kaplan to the Four Corners of Their Expert Reports Under FRCP 26 is granted.

### F. Plaintiff's Motion in Limine to Limit the Testimony of Defendants' Vocational Rehabilitation and Economist Experts

Plaintiff seeks to exclude certain opinions of Florida Marine's vocational rehabilitation experts, Stanford McNabb and Burt Ashman, and to exclude the opinions of Florida Marine's expert economist, Bert Verdigets.[46] Plaintiff's challenge to Verdigets' opinions depends, in part, on the outcome of Plaintiff's challenge to McNabb and Ashman's opinions. The Court discusses Plaintiff's challenges to each of the reports, in turn, below.

The expert report produced by McNabb and Ashman provides two alternative vocational rehabilitation opinions that turn on whether the trier of fact determines that the March 6, 2022 accident "produce[d] a permanent physical restriction to sedentary to light work with additional specific limitations" on Plaintiff's ability to work.[47] The first opinion, referred to as "Scenario

---

[43] R. Doc. 86.
[44] FED. R. CIV. P. 26(a)(2)(B)(i).
[45] *See Beary v. Deese*, No. 16-15757, 2018 WL 3455544, at *3 (E.D. La. July 17, 2018); *Borel v. Gulf Offshore Logistics, LLC*, No. 18-8188, 2019 WL 8112499, at *2 (E.D. La. July 24, 2019); *Smith-Jordan v. Love*, No. 19-14699, 2022 WL 226513, at *7 (E.D. La. Jan. 26, 2022).
[46] R. Doc. 87.
[47] R. Doc. 87-2 at 24–25.

One," applies if the trier of fact determines the accident *did* produce permanent physical restrictions on Plaintiff's ability to work.[48] The second opinion, referred to as "Scenario Two," applies if the trier of fact determines the accident *did not* produce any permanent physical restrictions on Plaintiff's ability to work.[49] Plaintiff takes issue with both opinions for different reasons.

Plaintiff first argues the alternative occupations and their associated salaries identified in Scenario One should be excluded from trial because the jobs are not sufficiently limited to the geographic area where Plaintiff resides (or where Plaintiff could reasonably commute, given his purported restrictions on commuting over 30-60 minutes). Plaintiff thus contends the opinions with respect to the jobs and pay scales in Scenario One will do nothing to assist the trier of fact and are inadmissible under Rule 702. Next, Plaintiff seeks to exclude the opinions contained in Scenario Two in their entirety on the basis that there is no evidence to suggest that Plaintiff is not permanently disabled as a result of the March 6, 2022 accident. Plaintiff argues the opinions in Scenario Two are premised entirely on baseless assumptions, rendering them unreliable, and thus inadmissible, under Rule 702.

Plaintiff also seeks to exclude certain opinions of Florida Marine's expert economist, Bert Verdigets. Verdigets opines regarding Plaintiff's economic past and future wage loss amount.[50] Plaintiff contends Verdigets' opinions are inadmissible for two different reasons. First, Plaintiff argues Verdigets' opinions should be excluded because they are premised on a return-to-work date of October 26, 2024, that is not supported by the evidence. Plaintiff separately argues that because Verdigets' opinions rely on the vocational rehabilitation opinions of McNabb and Ashman, if the

---

[48] *Id.* at 24.
[49] *Id.* at 25.
[50] *See* R. Doc. 87-3.

12

Court excludes the challenged vocational rehibition opinions, Verdigets' opinions should likewise be excluded as unreliable.

Upon the conversion of this matter to a non-jury trial, the Court's role as gatekeeper of potentially confusing and unreliable expert testimony became less urgent.[51] Indeed, courts have recognized that the safeguards provided in Rule 702 are not as essential in a case where the judge sits as trier of fact in place of a jury.[52] For these reasons, the Court will allow Florida Marine's vocational rehabilitation and economist experts to testify at trial. As always, Plaintiff may attack these experts' opinions through vigorous cross-examination or the presentation of contrary evidence. If, after presentation of all of the evidence, the Court finds these experts' opinions to be unreliable, the Court can, and will, exclude such evidence from its consideration.[53]

Accordingly, Plaintiff's Motion in Limine to Limit the Testimony of Defendants' Vocational Rehabilitation and Economist Experts is denied.

**G. Plaintiff's Motion in Limine to Exclude Florida Marine's January 29, 2024 Job Offer**

Unlike the prior motions challenging the admissibility of expert testimony, Plaintiff also seeks to exclude from evidence Florida Marine's January 29, 2024 job offer.[54] Plaintiff contends the job offer is inadmissible because it is irrelevant and hearsay. Motions in limine of this kind are generally disfavored, as they are frequently made in the abstract and without full context of all the evidence that will be presented at trial.[55] Thus, unless evidence is clearly inadmissible on *all*

---

[51] *See Atlantic Specialty Ins. Co. v. Porter, Inc.*, No. 15-570, 2016 WL 6569346, at *3 (E.D. La. Nov. 4, 2016) ("In *Daubert*, the Supreme Court's overriding concern was the problem of exposing the jury to confusing and unreliable expert testimony. . . . [I]n the context of a bench trial, the *Daubert* gatekeeping obligation is less urgent, because the gatekeeper and trier of fact are the same.").
[52] *See, e.g.*, *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000); *Atlantic Specialty Ins. Co.*, 2016 WL 6569346, at *3; *Matter of Magnolia Fleet, LLC*, No. 22-504, 2023 WL 6848096, at *2 (E.D. La. Sept. 19, 2023).
[53] *See Gov. of Canal Zone v. Jimenez G.*, 580 F.2d 897, 898 (5th Cir. 1978) (quoting *United States v. Masri*, 547 F.2d 932, 936 (5th Cir. 1977)) ("A judge, sitting as trier of fact, is presumed to . . . rest[] his verdict only on the admissible evidence before him and to . . . disregard[] that which is inadmissible.").
[54] R. Doc. 182.
[55] *See Washington v. E. Baton Rouge Par. Sch. Bd.*, No. 21-00192, 2023 WL 2072083, at *1 (M.D. La. Feb. 17, 2023).

potential grounds, courts should reserve evidentiary rulings until trial so that questions regarding the admissibility of the evidence can be resolved in the proper context.[56] This disfavoring of motions in limine is even more prevalent in a bench trial because "the court can and does readily exclude from its consideration inappropriate evidence of whatever ilk."[57]

Plaintiff argues the job offer is irrelevant because it is not a *real* job offer and was only offered as an attempt to mitigate Plaintiff's special damage claim. While the Court finds that some of Plaintiff's arguments regarding the relevance of the job offer may have merit, the Court cannot make such a determination at this time based on the evidence presently before it. Moreover, given that the Court is the trier of fact in this litigation, there is no risk of prejudice by admitting the job offer even if it turns out to be irrelevant. Thus, the Court will hear all of the evidence related to the job offer before determining whether and to what extent the job offer has any effect on Plaintiff's special damage claim.

The Court is also unwilling, at this time, to preclude the job offer from being introduced into evidence on the basis that it is hearsay. It is possible that the job offer is admissible as an exception to the rule against hearsay, but Florida Marine must lay the proper foundation at trial pursuant to Federal Rule of Evidence 803(6).

Accordingly, Plaintiff's Motion in Limine to Limit to Exclude Florida Marine's January 29, 2024 Job Offer is denied.

---

[56] *Id.*; *see also Auenson v. Lewis*, No. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) ("An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. Such evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context.").

[57] *Rash v. Lafayette Cnty.*, No. 20-CV-224, 2022 WL 983645, at *1 (N.D. Miss. Mar. 30, 2022) (internal quotations and citations omitted) (collecting cases) ("The courts in the Fifth Circuit have consistently held that a motion in limine serves no real purpose in a bench trial since the court can and does readily exclude from its consideration inappropriate evidence of whatever ilk.").

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Florida Marine's Motion in Limine to Exclude the Testimony of Steven Cunningham (R. Doc. 90) is **DENIED**; Florida Marine's Motion in Limine to Exclude the Testimony of Michael Berry (R. Doc. 85) is **GRANTED IN PART** and **DENIED IN PART**, as explained herein; Florida Marine's Motion in Limine to Exclude or Limit the Testimony of Dr. Charles A. Czeisler (R. Doc. 91) is **GRANTED IN PART** and **DENIED IN PART**, as explained herein;  Florida Marine's Motion in Limine to Exclude or Limit Certain Testimony Regarding U.S. Coast Guard Form CG-719K (R. Doc. 183) is **DENIED**;  Plaintiff's Motion to Strike (R. Doc. 187) is **DENIED**;  Plaintiff's Motion in Limine to Limit the Testimony of Drs. Duplantier, Thompson, Fein, and Kaplan to the Four Corners of Their Expert Reports Under FRCP 26 (R. Doc. 86) is **GRANTED**;  Plaintiff's Motion in Limine to Limit the Testimony of Defendants' Vocational Rehabilitation and Economist Experts (R. Doc. 87) is **DENIED**;  and Plaintiff's Motion in Limine to Limit to Exclude Florida Marine's January 29, 2024 Job Offer (R. Doc. 182) is **DENIED**.

New Orleans, Louisiana, this 18th day of July 2024.

  _____
  **DARREL JAMES PAPILLION**
  **UNITED STATES DISTRICT JUDGE**