UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICHOLAS REED MAGEE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3835** |
| **FLORIDA MARINE, LLC, ET AL** | **SECTION: "P" (5)** |

### ORDER AND REASONS

Before the Court are two motions filed by Defendants, Florida Marine, LLC, Florida Marine Transporters, LLC, and PBC Management, LLC (collectively, "Florida Marine"). The first is a Motion to Transfer to Allow Consolidation with a Related Lawsuit.[1] The second is a Motion for Reconsideration.[2] Through both motions, Florida Marine asks this Court to transfer this action to the United States District Court for the Eastern District of Kentucky. Plaintiff, Nicholas Reed Magee, opposes both motions. The Court previously entered an Order denying both motions, with written reasons to follow.[3] The Court now assigns reasons below.

### I. BACKGROUND AND PROCEDURAL HISTORY

On October 13, 2022, Plaintiff filed his Seaman's Complaint for Damages ("Complaint") in this Court, alleging he sustained significant injuries while working as a Jones Act seaman for Florida Marine and that Florida Marine is responsible for his injuries under the Jones Act and general maritime law. Plaintiff alleged the injury occurred while he was working as a deckhand in service of Florida Marine's vessel on the Ohio River near

---

[1] R. Doc. 146.
[2] R. Doc. 164.
[3] R. Doc. 181.

Cattlesburg, Kentucky. Plaintiff's Complaint included a request for a trial by jury on all issues raised therein.

On November 8, 2022, Florida Marine filed an Answer to Plaintiff's Complaint as well as a Third-Party Demand and Rule 14(c) Tender ("Demand") against McNational, Inc. ("McNational").[4] In its Demand, Florida Marine alleged that Plaintiff slipped and fell while walking between the barge and dock that were in the care, custody, and garde of McNational, doing business as Mid-America Fuels, Inc. ("MAF"). Florida Marine further alleged it was McNational's negligence that caused Plaintiff's injuries and that McNational is solely liable to Plaintiff for his injuries and is also liable to Florida Marine for reimbursement of all maintenance and cure paid to, or on behalf of, Plaintiff arising out of the incident.[5] In response, McNational filed a motion to dismiss for lack of personal jurisdiction, which this Court granted on January 16, 2024.[6]

At the time the Court ruled on McNational's motion to dismiss, Florida Marine had filed a motion for leave to file a supplemental memorandum in opposition to McNational's motion, which asked the Court to transfer the action to the Eastern District of Kentucky rather than dismiss the claims against McNational, pursuant to 28 U.S.C. § 1631. Because Florida Marine's motion for leave was opposed and had not yet come under submission when the Court ruled on McNational's motion,[7] neither the motion for leave nor the

---

[4] R. Doc. 9.
[5] *Id.* at 9–11.
[6] R. Doc. 110.
[7] Florida Marine set its motion for submission on Feb 7, 2024, and did not request expedited consideration of its motion.

2

contents of the supplemental memorandum were addressed or considered by the Court prior to dismissing the claims against McNational for lack of personal jurisdiction.

Shortly after the Court's dismissal of the claims against McNational, on January 24, 2024, Florida Marine filed suit against MAF in the United States District Court for the Eastern District of Kentucky, asserting claims for reimbursement of maintenance and cure paid to Plaintiff and for contribution for any tort claim asserted against Florida Marine by Plaintiff.[8]  And on January 29, 2024, Florida Marine filed the instant Motion to Transfer to Allow Consolidation with a Related Lawsuit ("Motion to Transfer").[9]  In the Motion to Transfer, Florida Marine argues transfer of this litigation to the Eastern District of Kentucky is appropriate under 28 U.S.C. § 1404(a) "because jurisdiction is proper as to both Florida Marine and MAF and because all claims arising out of Plaintiff's incident can be litigated in one setting, which will promote the interests of justice and judicial efficiency."[10]

After the Motion to Transfer was fully briefed, Florida Marine filed the instant Motion for Reconsideration.[11]  The Motion for Reconsideration asks the Court to reconsider its ruling dismissing the claims against McNational for lack of personal jurisdiction.  Florida Marine specifies that it is not asking the Court to reconsider its determination that it lacks personal jurisdiction over McNational; rather, Florida Marine seeks the Court's reconsideration of whether the appropriate remedy was dismissal of the

---

[8] R. Doc. 146-3.
[9] R. Doc. 146.
[10] R. Doc. 146-1 at 1.
[11] R. Doc. 164.

3

claims against McNational as opposed to transferring the action to the Eastern District of Kentucky. Florida Marine contends reconsideration is appropriate because the Court did not rule on Florida Marine's Motion for Leave to File a Supplemental Memorandum in Opposition—which addressed the propriety of transfer as opposed to dismissal under 28 U.S.C. § 1631—before the Court dismissed the claims against McNational. Acknowledging the pending Motion to Transfer, Florida Marine explains that the Motion for Reconsideration was filed "simply to provide this Court with a cleaner, and perhaps simpler, means of considering the propriety of transfer, which, under either procedural remedy, is necessary and proper."[12]

## II.  LAW AND ANALYSIS

### A. Motion for Reconsideration

Florida Marine seeks reconsideration of the Court's January 16, 2024 Order and Reasons granting McNational's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 59(e).[13]  Because the Court's order dismissing the claims against McNational is an interlocutory order, the Court finds Florida Marine's motion for reconsideration is governed by Rule 54(b).[14]  "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[15]

---

[12] R. Doc. 164-1 at 1.
[13] R. Doc. 164.
[14] *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ("Rule 59(e) governs motions to alter or amend a final judgment; Rule 54(b) allows parties to seek reconsideration of interlocutory orders . . ..").
[15] *Id.*

4

At the time of dismissal, the Court did not consider the propriety of transfer under 28 U.S.C. § 1631. Having now carefully considered this issue, however, the Court finds transfer is not warranted.

Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . ., and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.[16]

Accordingly, "[a] case is 'transferable' pursuant to § 1631 when three conditions are met: (1) the transferee court would have been able to exercise jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice."[17]

As an initial matter, the Court notes that neither party briefed whether § 1631 applies when the party over which the Court lacks jurisdiction was brought into the lawsuit by the defendant under Federal Rule of Civil Procedure 14(c). Florida Marine seemingly contends that because a tender pursuant to Rule 14(c)(2) creates a direct relationship between plaintiff and the third-party defendant, McNational was a "proper party defendant in this action" such that § 1613 does apply. Florida Marine provides no case law to support

---

[16] 28 U.S.C. § 1631.
[17] *Harutyunyan v. Love*, Civil Action No. 19-41, 2019 WL 5551901, at *4 (E.D. La. Oct. 28, 2019) (quoting *Trejo-Mejia v. Holder*, 593 F.3d 913, 915 (9th Cir. 2010)) (cleaned up).

the propriety of a transfer under § 1613 in this context, and the issue was not addressed by either party with any more specificity than that one sentence by Florida Marine.

Even if Florida Marine is correct, this issue is made even more complicated by the fact that the special procedures under Rule 14(c) may not have been available to Florida Marine, rendering its Rule 14(c)(2) tender improper such that there could be no direct relationship between Plaintiff and McNational.[18]  Although this issue was also not briefed by either party, the Court notes that the special procedures under Rule 14(c) are only available if Plaintiff has invoked the Court's admiralty jurisdiction under Rule 9(h).[19] Upon review of the Complaint in this matter, the Court finds no such invocation and instead believes this action is proceeding under this Court's federal question jurisdiction. Accordingly, Rule 14(c) was likely not available to Florida Marine at the time it "tendered" McNational to Plaintiff.  The Court makes no determination regarding these issues at this time, not only because these issues were not raised or briefed by the parties, but because the Court finds transfer to the Eastern District of Kentucky under § 1631 is not available on other grounds.  Indeed, even if § 1631 does apply here and even if Florida Marine's

---

[18] *See generally Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413, 1417–18 (W.D. La. 1988) (explaining that the procedures under Rule 14(c) were "added as part of the 1966 unification of federal admiralty practice and civil practice," and that "Part (c) was intended to preserve a defendant's traditional right in admiralty to demand judgment directly in favor of plaintiff and against the third-party defendant," but distinguishing the third-party procedure under Rule 14(c) "from that under Rule 14(a), which does not automatically establish a direct relationship between plaintiff and third-party defendant upon the assertion of a third-party demand.").

[19] *See Luera v. M/V Alberta*, 635 F.3d 181, 187 (5th Cir. 2011) (referring to Rule 14(c) as a "unique admiralty procedure" that was only available because the plaintiff had originally elected to proceed within the court's admiralty jurisdiction under Rule 9(h)); *see also Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 726 n.6 (5th Cir. 1983) (noting that the defendant was not entitled to the benefits of Rule 14(c) where plaintiff's complaint was based on the Jones Act and the general maritime law and did not expressly contain a Rule 9(h) declaration but did contain a jury demand).

Rule 14(c) tender was proper, the Court could not have transferred this action instead of dismissing McNational because there is no evidence that the Eastern District of Kentucky would have been able to exercise personal jurisdiction over McNational at the time this lawsuit was filed.

McNational is not subject to general jurisdiction in Kentucky because its state of incorporation is Delaware and its principal place of business is in Ohio.[20] Specific jurisdiction over McNational also does not automatically apply because although the incident took place in Kentucky, it took place at a fuel flat operated by *McNational's subsidiary*, MAF.[21] Of course, it is possible that McNational could be subject to personal jurisdiction in Kentucky based on the alter ego theory,[22] but Florida Marine has not shown

---

[20] R. Doc. 13-2 ¶¶ 28–29; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradigm bases for general jurisdiction.'") (cleaned up). In support of its position that McNational and its Louisiana subsidiaries are alter egos of each other, Florida Marine previously challenged McNational's contention that its headquarters are in Ohio, arguing instead that McNational has no headquarters. To the extent the Court must consider that argument for purposes of determining where McNational is subject to general jurisdiction, the Court finds it is irrelevant here. Indeed, assuming *arguendo* Florida Marine is correct, having no headquarters does not support a finding that McNational's headquarters are in Kentucky and, thus, does not support a finding that McNational is subject to general jurisdiction in Kentucky.

[21] *See* R. Doc. 13-2 ¶ 13. Florida Marine did not address any jurisdictional facts in its motion for reconsideration. The Court nevertheless notes that in the proposed supplemental memorandum that the Court did not consider prior to ruling on McNational's motion to dismiss, Florida Marine contends the action could have been filed in the Eastern District of Kentucky, the district in which Cattlesburg, Kentucky sits, because Mr. Magee's incident occurred in Cattlesburg "when he attempted to step between *McNational's* fuel flat and dock" while the vessel Mr. Magee worked on, which was owned by Florida Marine, was being re-fueled. *See* R. Doc. 103-3 at 3 (emphasis added). Florida Marine then concludes, "Unquestionably, specific jurisdiction is appropriate there." *Id.* The undisputed evidence pertaining to this fuel flat, however, indicates that it is located at an MAF facility and is operated solely by MAF. *See* R. Doc. 13-2 at ¶¶ 9, 13. Florida Marine's unsupported statement in its proposed supplemental memorandum does not prove otherwise. Moreover, finding MAF, and not McNational, to be the proper entity associated with the fuel flat and dock for purposes of specific jurisdiction is also supported by the fact that the lawsuit Florida Marine subsequently filed in the Eastern District of Kentucky names MAF as the sole defendant, alleges that the fuel flat was owned and operated by MAF, and further alleges that the fuel flat and dock were within the care, custody, and control of MAF. *See* R. Doc. 146-3 at ¶¶ 1, 4, 6.

[22] Just as in this Circuit, courts within the Sixth Circuit, such as the Eastern District of Kentucky, also apply the alter-ego theory to exercise personal jurisdiction over a parent corporation that would not otherwise be

that McNational is the alter ego of MAF, the subsidiary that would be subject to specific jurisdiction in this case, or of any of its other subsidiaries that may be subject to general jurisdiction in Kentucky. In fact, Florida Marine does not address this issue at all.[23] And while it is not the Court's duty to scour the record for evidence to support transfer, the Court notes that from what it did review, the evidence does not support finding that McNational is the alter ego of MAF or any of its other subsidiaries that may be subject to general jurisdiction in Kentucky.[24]

Accordingly, the Court finds that it could not have transferred this action to the Eastern District of Kentucky pursuant to 28 U.S.C. § 1631 as an alternative to dismissing the claims against McNational. Florida Marine's Motion for Reconsideration is therefore denied.

**B. Motion to Transfer**

The Court now turns to Florida Marine's Motion to Transfer, which seeks the transfer of Plaintiff's suit against Florida Marine to the Eastern District of Kentucky

---

subject to personal jurisdiction in that court if the parent is an alter ego of its subsidiary that would be subject to the court's personal jurisdiction. To make such a determination, the Sixth Circuit has explained that courts must look to whether there is a "'unity of interest and ownership' that goes beyond mere ownership and shared management personnel." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017). They consider factors such as "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation." *Id.* at 849–50.

[23] The Court can only assume that Florida Marine was relying on its previous assertion that specific jurisdiction exists as to McNational, despite the fact that this unsupported assertion was contradicted by undisputed evidence in the record at the time it was made and is further contradicted by Florida Marine's subsequent allegations in its lawsuit now pending in the Eastern District of Kentucky against MAF. *See supra* note 21.

[24] The Court's review included the declaration provided by McNational in support of its motion to dismiss the exhibits attached to Florida Marine's opposition to McNational's motion to dismiss. R. Docs. 13-2, 41-1–41-4.

pursuant to 28 U.S.C. § 1404(a) to allow for consolidation with Florida Marine's related lawsuit against MAF.  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[25]  The parties do not dispute that Plaintiff could have also brought his claims against Florida Marine in the Eastern District of Kentucky.  Instead, the parties disagree over whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice.

The Fifth Circuit recently reiterated the standard and burden of proof for a motion to transfer pursuant to § 1404(a).

> Transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party "clearly establishes good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." It is the movant's burden—and the movant's alone—to "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."
>
> At minimum, showing "good cause" requires the movant "clearly [to] demonstrate" that its chosen venue is "clearly more convenient." That standard is not met if the movant merely shows that the transferee venue "is more likely than not to be more convenient." Likewise, "the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."
>
> Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

---

[25] 28 U.S.C. § 1404(a).

9

> The district court—when assessing whether the movant clearly carried its burden—must consider the following public-interest and private-interest factors.
>
> The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public-interest factors are "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."
>
> "No factor is of dispositive weight, and we have cautioned against a 'raw counting of the factors' that 'weigh[s] each the same.'" Moreover, "[w]here there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer."[26]

For the following reasons, the Court finds Florida Marine has failed to carry its burden to establish good cause for transfer based on convenience and justice.

Florida Marine largely ignores the private and public interest factors and focuses primarily on the fact that the Eastern District of Kentucky is a more convenient forum for Florida Marine because it is the only forum that would permit Plaintiff to pursue his claims against Florida Marine and Florida Marine to pursue its claims against MAF in one setting. In other words, according to Florida Marine, transfer would avoid duplicative litigation and prevent waste of time and money.  This argument is relevant to the fourth private-interest factor—"all other practical problems that make trial of a case easy, expeditious and

---

[26] *In re Clarke*, 94 F.4th 502, 508–09 (5th Cir. 2024) (emphasis in original) (internal citations omitted).

inexpensive"—but, as shown by Plaintiff, transfer to the Eastern District of Kentucky is not more convenient or in the interest of justice for many other reasons.

Both Plaintiff and Florida Marine are domiciled in the Eastern District of Louisiana. Moreover, 19 of Plaintiff's 31 potential witnesses and 40 of Florida Marine's 59 potential witnesses reside within the Eastern District of Louisiana. Contrarily, only one witness is within the subpoena power of the Eastern District of Kentucky. Plaintiff has also shown that transfer to Kentucky would substantially increase the cost of attendance for his key witnesses who would be willing to travel to testify at trial. And while Florida Marine contends transfer would avoid duplicative litigation, Florida Marine completely ignores the reality that transfer would result in the duplication of work already done in this case, given that the parties had completed discovery and that dispositive motions and motions in limine challenging the admissibility of expert testimony were filed and pending in this Court at the time the motion to transfer was filed. Indeed, transfer would require the parties in this case to re-do many of the tasks already completed and would result in further delay to Plaintiff. Accordingly, the Court finds none of the private-interest factors weigh in favor of transfer to the Eastern District of Kentucky.

The Court's review of the public-interest factors fares no better in supporting Florida Marine's motion to transfer. This is an action between a Louisiana seaman and his Louisiana employer, and it is governed by the Jones Act and general maritime law. The local interest in having this localized dispute decided at home thus weighs against transfer. And as to the remaining factors, there has been no showing that the Eastern District of Kentucky is a more convenient forum due to the familiarity it has with the law that will

11

govern this case, the administrative difficulties flowing from court congestion, or the avoidance of unnecessary problems regarding conflict of laws.

For all these reasons, the Court finds Florida Marine has failed to show that the Eastern District of Kentucky is a clearly more convenient forum. Florida Marine's Motion to Transfer is therefore denied.

## III. CONCLUSION

For the reasons set forth herein, Florida Marine's Motion to Transfer to Allow Consolidation with a Related Lawsuit (R. Doc. 146) and Florida Marine's Motion for Reconsideration (R. Doc. 164) are **DENIED**.

New Orleans, Louisiana, this 24th day of July 2024.

_____
**DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE**